UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON
CIVIL ACTION NO. 10-1-JGW

BARBARA POWERS                                                    PLAINTIFF

V.

TIRUPATHI HOSPITALITY, LLC, et al.                                DEFENDANTS

## MEMORANDUM OPINION

Pending is a motion for summary judgment filed by Defendant Tirupathi Hospitality, LLC, d/b/a Days Inn. [Doc. 19]. For the following reasons, the motion will be denied.[1]

### I. Factual and Procedural History

Plaintiff and her brother, James Pierce, were traveling north on Interstate 75 in December 2008 when they exited due to radio reports of dangerous weather. Plaintiff and Pierce checked into a Days Inn in Williamstown, Kentucky near the interstate at about 3:30 p.m, and proceeded to their room. About an hour later, plaintiff left the room to go to Pierce's vehicle to retrieve a nightgown. After plaintiff stepped off the sidewalk onto the asphalt parking lot, she slipped and fell near Pierce's vehicle, sustaining injuries to her right hip and shoulder. Plaintiff sued defendant in a Kentucky state court in December 2009. In January 2010, defendant removed the action to this Court on diversity grounds.

### II. Analysis

Defendant contends it is entitled to summary judgment because Kentucky law provides

---

[1] All parties have consented to disposition by the magistrate judge pursuant to 28 U.S.C. §636©.

1

that a premises owner has no duty to warn against or remove outdoor hazards which are equally obvious to invitees and premises owners. Because the Kentucky Supreme Court has recently held that whether a hazard is an open and obvious danger is a question of fact to be determined by the jury, summary judgment in this case is inappropriate.

### A. Summary Judgment Standard

"For purposes of diversity jurisdiction, a federal court is in effect another court of the forum state, in this case Kentucky, and must therefore apply the substantive law of that state." *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003). But since summary judgment is a "procedural device for deciding a case without the necessity of a full-blown trial[,]" a court must analyze a summary judgment motion in a diversity action under the terms of Federal Rule of Civil Procedure 56. *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 459 (6th Cir. 1986).

Summary judgment is proper only if the facts on file with the court demonstrate not only that no genuine issue of material fact remains to be resolved but also that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©. The moving party may discharge its burden by "pointing out . . . an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party cannot rest on its pleadings, but must identify specific facts that remain for the finder of fact at trial. *See id.* at 324. Although all inferences are drawn in favor of the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), the nonmoving party must present significant and probative evidence in support of its complaint. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

The court's function is not to weigh the evidence and determine the truth of the matters

asserted, but to determine whether a genuine issue of material fact remains for a fact finder at trial. *Id.* at 249. The inquiry is whether the evidence presents a "sufficient disagreement to require submission [of the case] to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The court reviewing a summary judgment motion need not search the record in an effort to establish the lack of genuinely disputed material facts. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). Rather, the burden is on the nonmoving party to present affirmative evidence to defeat a properly supported motion, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989), and to designate specific facts that are in dispute. *Anderson*, 477 U.S. at 250; *Guarino*, 980 F.2d at 404-05.

### B. Open and Obvious Doctrine

Defendant argues that plaintiff's claims are barred by the open and obvious doctrine because the icy parking lot "was a natural outdoor hazard which was as obvious to Plaintiff as it should have been to the Defendants." [Doc. 25, p. 7]. *See Standard Oil Co. v. Manis*, 433 S.W.2d 856, 858 (Ky. 1968) ("natural outdoor hazards which are as obvious to an invitee as to the owner of the premises do not constitute unreasonable risks to the former which the landowner has a duty to remove or warn against."). Plaintiff has two main arguments in response. She first argues that the icy parking lot was not an open and obvious danger. Second, plaintiff contends that even if the Court determined that the icy parking lot was an open and obvious danger, summary judgment would still be inappropriate because the Kentucky Supreme Court recently held that the issue of whether a condition is an open and obvious danger is a question of fact to be resolved by a jury, not an issue of law to be resolved by the court. *See Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385 (Ky. 2010)

**1. A genuine issue of material fact exists as to whether the black ice in this case was an open and obvious danger.**

The question of whether "a natural hazard like ice or snow is obvious depends upon the unique facts of each case." *Schreiner v. Humana, Inc.*, 625 S.W.2d 580, 581 (Ky. 1981). A condition is "obvious" if "both the condition and the risk are apparent to and would be recognized by a reasonable man in the position of the visitor exercising ordinary perception, intelligence and judgment." *Bonn v. Sears, Roebuck & Co.*, 440 S.W.2d 526, 529 (Ky. 1969). In the case at hand, the Court concludes that there is a genuine issue of material fact as to whether the icy parking lot was an obvious natural hazard, especially in light of the fact that the "black ice" which purportedly caused plaintiff's fall was not visible.[2]

The evidence is uncontradicted that no one observed ice in the parking lot at about 3:30 p.m. when plaintiff and Pierce checked into their room. There was, according to plaintiff and Pierce, black ice on the hotel's parking lot about an hour later when plaintiff went to retrieve her nightgown. But plaintiff also testified that it was not raining or snowing when she went outside. And Sanat Joshi, who was on duty at the Days Inn on the afternoon plaintiff was injured, testified in his deposition that he did not believe salt needed to be applied to the parking lot at 3:30 p.m. when plaintiff and Pierce checked in, but after he was told plaintiff had fallen, he started putting salt down at the hotel because it was getting slick. But Joshi testified that he started salting because the parking lot was getting slick, not because of plaintiff's fall. And Joshi admitted that he only had one bag of salt on hand earlier that day and had gone to buy more salt

---

[2]Plaintiff testified in her deposition that "[b]lack ice is something you can't see. I mean the reason I knew it was black ice [was] because I was laying on something cold, okay, but I didn't -- you didn't see it. You can't see black ice." [Doc. 17-1, p. 27].

shortly before plaintiff was injured because it took at least ten bags to cover the parking lot.

Drawing all reasonable inferences in favor of plaintiff, therefore, the parking lot became icy between approximately 3:30 p.m. and 4:30 p.m., yet defendant did not spread salt on the parking lot or sidewalks. And Defendant had, by its own employee's admission, an inadequate supply of salt on hand for much of the day. Moreover, Pierce testified in his deposition that the ambulance personnel who came to assist plaintiff had to get salt from the hotel office because of the slippery conditions. Plaintiff, meanwhile, testified that she did not see the "black ice" in the parking lot prior to falling. Thus, drawing all inferences in favor of plaintiff, the Court concludes that there is a genuine issue as to whether the icy parking lot was truly an open and obvious hazard. See, e.g., *Estep v. B.F. Saul Real Estate Inv. Trust*, 843 S.W.2d 911, 914 (Ky.App. 1992) (genuine issue of fact existed as to whether parties knew of ice on sidewalk which had been cleared but which still had a "thin skiff" of snow covering ice); *Schreiner*, 625 S.W.2d at 581 (holding summary judgment inappropriate when plaintiff stated she could not see ice which caused her fall but premises owner's maintenance department had been notified of dangerous condition before plaintiff fell).

**2. Open and obvious is a question of fact to be resolved by the jury.**

Even if the Court had concluded that the icy parking lot constituted an open and obvious condition, summary judgment would be inappropriate because the Kentucky Supreme Court recently held in *McIntosh* that a court "should not merely label a danger as 'obvious' and then deny recovery." 319 S.W.3d at 392. Instead, a court should "ask whether the land possessor could reasonably foresee that an invitee would be injured by the danger. If the land possessor can foresee the injury, but nevertheless fails to take reasonable precautions to prevent the injury,

5

he can be held liable." *Id.* This approach to the open and obvious doctrine represents a marked shift in Kentucky jurisprudence.

Before *McIntosh*, Kentucky precedent clearly held that a premises owner was not liable for failing to warn or remedy an obvious natural hazard. This former precedent is greatly relied upon by defendant, especially *Manis*, *supra*. In *Manis*, a truck driver was unloading a truckload of gasoline when he slipped and fell on an icy platform. Noting that the accident occurred in daylight and that the appellee (plaintiff below) was aware that there was ice and snow in the area, the court held that the premises owner had "no duty . . . to stay the elements or make this walkway absolutely safe. Nor was there a duty to warn appellee that the obvious natural conditions may have created a risk . . . [because the] hazard . . . was as apparent to appellee as it was to appellant." *Manis*, 433 S.W.2d at 859.

Though it was rendered in the era of contributory negligence, *Manis* continued to be followed by Kentucky state courts well after they adopted comparative negligence. For example, in 2000, the Kentucky Supreme Court reiterated that *Manis* represented "[t]he current state of the law in Kentucky regarding outdoor natural hazards . . . ." *PNC Bank, Kentucky, Inc. v. Green*, 30 S.W.3d 185, 186 (Ky. 2000). In 2005, the Kentucky Supreme Court again reiterated its adherence to *Manis* in *Horne v. Precision Cars of Lexington, Inc.*, 170 S.W.3d 364, 368 (Ky. 2005).

In *Horne*, the court further refined the open and obvious doctrine by dividing premises owner liability cases into three categories. Citing *Manis*, the court held in *Horne* that the first category involved natural outdoor hazards visible to invitees and owners alike. 170 S.W.3d at 368. The second category involved an invitee injured by an encounter with a foreign substance

6

or other dangerous condition on the premises (i.e., a slip on a substance on the floor of a store). *Id.* The third category involved hazards caused by the owner. *Id.* Five years later, however, the Kentucky Supreme Court changed the overall analysis of premises owner liability cases when it rendered *McIntosh*, *supra*.

In *McIntosh*, a paramedic tripped over a raised curb while transporting an ill patient into a hospital emergency room. The hospital moved for summary judgment, claiming that the open and obvious doctrine barred plaintiff's claim for relief. The trial court denied summary judgment and the jury found in plaintiff's favor. On appeal, the question was whether the open and obvious doctrine barred plaintiff's cause of action. In order to answer that question, the court was required to first determine whether the applicability of the open and obvious doctrine involved a question of law or of fact. After noting disagreement among other courts who had considered the question, the Kentucky Supreme Court held that the question should be analyzed as a question of fact. *See* 319 S.W.3d at 390.

Unfortunately, the Kentucky Supreme Court did not discuss the three categories of premises owner liability in *McIntosh*, nor did it even mention *Manis*. It is difficult to determine with precision, therefore, whether *McIntosh* applies only to cases involving owner-created hazards (the third category of the three types of cases set forth in *Horne*, and the category clearly at issue in *McIntosh*), leaving *Manis* to control open and obvious natural outdoor hazards, or whether *McIntosh* applies to all premises owner cases, thereby tacitly overruling *Manis*.

The Kentucky Supreme Court used no limiting language in *McIntosh*. Instead, the court frequently spoke broadly of the open and obvious doctrine as a whole. *See, e.g., id.* at 388 ("However, the open and obvious doctrine states that land possessors cannot be held liable to

7

invitees who are injured by open and obvious dangers. *Restatement (First) of Torts § 340 (1934).*
The question then is whether the applicability of the doctrine is a question of law or of fact.").
Indeed, the court broadly stated that courts "should not merely label a danger as 'obvious' and
then deny recovery." *Id.* at 392. There is simply no indication that the Kentucky Supreme Court
intended *McIntosh* to apply only the category of cases in which a premises owner caused the
purportedly open and obvious danger. Accordingly, the Court concludes that the Kentucky
Supreme Court intended for its decision in *McIntosh* to apply to all premises owner liability
claims, including cases involving purportedly open and obvious natural outdoor hazards.

Applying *McIntosh* to the case at hand, it is clear that, under Kentucky law, the question
of whether the icy parking lot was an open and obvious hazard is a question of fact to be
resolved by a jury. *Id.* at 392 ("only under extremely rare circumstances could a plaintiff avoid
some share of the fault under comparative negligence. While 'open and obvious danger' is no
longer a complete defense under the Restatement, it is nonetheless a heightened type of danger
which places a higher duty on the plaintiff to look out for his own safety. Such a condition,
being open and obvious, should usually be noticed by a plaintiff who is paying reasonable
attention. Yet the plaintiff is not completely without a defense to this: there could be foreseeable
distraction, or the intervention of a third party pushing the plaintiff into the danger, for example.
Even in such situations, a jury could still reasonably find some degree of fault by the plaintiff,
depending on the facts."). Thus, *Manis*, which clearly held that a premises owner owed no duty
to a plaintiff injured by an open and obvious condition, no longer represents the current status of
Kentucky law.

Viewing the evidence in the light most favorable to plaintiff, one can readily conclude

8

that defendant could have reasonably foreseen that the poor weather conditions, combined with defendant's failure to spread salt on the motel's grounds prior to plaintiff's fall, could have led to plaintiff being injured. Accordingly, summary judgment as a matter of law would have been inappropriate even if the Court had agreed with defendant that the icy parking lot was an open and obvious danger.

### III. Conclusion

Accordingly, it is **ORDERED THAT:**

Defendant's motion for summary judgment [Doc. 19] is **denied**.

This the 26th day of January, 2011.

Signed By:
*J. Gregory Wehrman*
United States Magistrate Judge